**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

THOMAS F. ALSTON, #327-171                  :
    Plaintiff,

                               :

      v.                                          Civil No. RDB-11- 1503

                               :

WARDEN  BOBBY P. SHEARIN
ASSISTANT WARDEN RICHARD                    :
  GRAHAM, JR.
COREY McKENZIE[1]                           :
SGT. ANDREW McKINNEY
CO II RYAN HESELBACH                        :
CO II ANTHONY FAZENBAKER. Jr.
PHILLIP NELSON                              :
UNIDENTIFIED OFFICERS
    Defendants                              :

**MEMORANDUM OPINION**

        Pending is a dispositive motion filed on behalf of Defendants Shearin, Graham, McKenzie, McKinney, Heselbach and Fazenbaker (ECF Nos. 15 and 16), which shall be construed as a motion for summary judgment pursuant to Fed. R. Civ. Pro. 56.[2]  Plaintiff Alston has filed opposition to the motion[3] (ECF No. 19), to which Defendants have replied.  ECF No. 23. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendants' names.

[2] The unidentified officers are subject to dismissal from this action.  Defendant Nelson is no longer employed by the Maryland Division of Correction and has not been served with summons and complaint.  For reasons set forth herein, had Nelson and any "unidentified officers" been served, each would have been entitled to summary judgment.

[3] Plaintiff's objection to Defendants' request for an extension of time (ECF No. 22) is denied.

**Background**

Plaintiff, housed at North Branch Correctional Institution ("NBCI"), Maryland's maximum security prison, makes several claims stemming from an incident that began on April 23, 2011. Plaintiff claims that he was subjected to a "humiliating strip search in full view of several others" and that correctional officers violated Division of Correction ("DOC") policy by conducting a search of his cell outside of his presence.  He also alleges that some of his property was improperly confiscated and that excessive force was used against him when he refused to allow correctional officers to lock his "food slot" on his cell door while he argued with them concerning items removed from his cell during the search.[4]  Finally, Plaintiff alleges that he was denied medical treatment on April 23, 2011, when Defendant McKenzie ignored his request for medical attention, and again on April 30, 2011, when McKenzie and Defendant Fazenbaker refused his request for medical attention.  Plaintiff seeks money damages and a "preliminary and permanent injunction ordering defendants [] to be placed out [of] the unit" in which he is housed. ECF No. 1  at 12.

Record evidence indicates that on April 23, 2011, Plaintiff was confined to NBCI's disciplinary segregation Housing Unit ("HU") 1, A tier, cell no. 37 ("HU 1-A-37"). ECF No. 16, Exhibit A, Declaration of Sgt. McKenzie, at ¶ 2; *see also*  Exhibit B, Division of Correction Directive ("DCD") 110-6.IV.A.  At approximately 7:30 p.m., McKinney approached the cell of inmate Desmond Bright, housed in cell no. HU 1 1-A-35, to serve him with paperwork regarding

---

[4] Specifically, Plaintiff alleges that Defendant McKenzie "closed [Plaintiff's] whole right arm up to [his] shoulder in the slot," and that "officers bent [his] fingers back, twisted [his] wrist, pushed [his] hand back to [his] back forearm.".  Plaintiff alleges that Defendants McKinney and Heselbach "helped [Sgt. Mckenzie] force the slot close [sic] on [his] arm while trying to push [his] arm back in …" ECF No. 1 at 8.

the confiscation of some of his property. *Id*., Exhibit C, Declaration of CO McKinney, at ¶2. As McKinney approached Bright's cell, he observed a homemade "fishing line" coming out from under the cell door. *Id*. The "fishing line", used by inmates to pass contraband or messages to one another, was attached to another fishing line that was coming from Plaintiff's cell door, HU 1-A-37, which was separated from Bright's cell by one other cell, HU-1-A-36, and on the same side of the tier.  *Id*. McKinney grabbed the fishing line, a thin piece of a sheet, and ripped it to break the line before it could be pulled back into to a cell. *Id*. He noticed a small white envelope stuck to the bottom of Plaintiff's cell that contained a homemade weapon, a five-and-a-half inch piece of metal with a sharpened edge and three inches of the metal wrapped in a bed sheet. *Id*.  McKinney took custody of the weapon and notified McKenzie of the incident. *Id*.

As a weapon had been found, McKenzie ordered both cells (HU 1-A-35 and HU 1-A-37) searched for contraband. *Id.*, Exhibit A, ¶ 3-4. Plaintiff was handcuffed behind his back, and taken to the HU 1 B-tier Education Booth for the purpose of conducting a strip search for other weapons or contraband.  *Id*., Exhibit A, ¶ 4, Exhibit C, ¶ 4, Exhibit B, DCD 110-6.VI.C (1)-(3) (inmates on disciplinary segregation shall be handcuffed behind the back whenever they are out of their cells, and shall be physically escorted by custody staff). The strip search was conducted by McKenzie, CO Brandon Caple (not a party to this action), Defendant Heselbach, and McKinney. *Id.*, Exhibit A, ¶ 4, Exhibit C, ¶ 4, Defendants' Exhibit D, Declaration of CO Heselbach, ¶ 4. No other officers or inmates were present during the strip search.  *Id*., Exhibit A, ¶ 7, Exhibit C, ¶ 7, Exhibit D, ¶ 7. Plaintiff, who was verbally aggressive toward the officers, .was warned that if his behavior continued he would remain in the Educational Booth during the

search of his cell. Exhibit A, ¶ 6, Exhibit C, ¶ 6, Exhibit D, ¶ 6.  The misconduct continued and Plaintiff was not allowed to be present during the search of his cell. *Id.*

At approximately 8 p.m., Heselbach and McKinney searched Plaintiff's cell, where they found items which a disciplinary segregation inmate cannot possess, including finger nail clippers, a compact disc, and a hardcover book. *Id.*, Exhibit A, ¶ 11, Exhibit C, ¶ 11, Exhibit D, ¶ 11; *see also* Defendants' Exhibit E (Notice of Confiscation and Inmate Personal Property Disposition).  A confiscation of property form was completed which Plaintiff signed, noting no discrepancies. *Id.*,  Exhibit A, ¶ 12, Exhibit C, ¶ 12, Exhibit D, ¶ 12; Exhibit E. Officers also found and removed trash in Plaintiff's cell, including several empty milk cartons, cardboard, and empty hygiene containers. *Id.*, Exhibit A, ¶ 13, Exhibit C, ¶ 13, Exhibit D, ¶ 13.

McKenzie, Heselbach, and McKinney escorted Plaintiff back to his cell, at which time Plaintiff stated he wanted his trash returned to his cell.  The request was denied.  *Id.*, Exhibit A, ¶ 14. Plaintiff entered his cell and with his back to the cell door, put his hands through the food slot to have his handcuffs removed. Id., Exhibit A, ¶ 15, Exhibit C, ¶ 14, Exhibit D, ¶ 14. Once Plaintiff's handcuffs were removed, Plaintiff turned around to face the cell door and pushed on the food slot enough to prevent McKinney from locking the food slot. *Id.*, Exhibit A, ¶ 17, Exhibit C, ¶ 16, Exhibit D, ¶ 16. Heselbach and McKinney held the food slot door closed while McKenzie ordered Plaintiff to stop pushing on the food slot door so it could be locked, but Plaintiff refused to comply. *Id.*, Exhibit A, ¶ 18, Exhibit C, ¶ 17, Exhibit D, ¶ 17.  A prisoner's refusal to close his food slot is considered a threat to harm institutional staff, property, and/or other inmates. *Id.*, Exhibit A, ¶ 19, Exhibit C, ¶ 18, Exhibit D, ¶ 18; *see also* Plaintiff's Exhibit B, p.2 ("[HU] #1 Segregation Unit Inmate Orientation Guide," NBCI.ID.110.0006.1, Appendix

3).  Plaintiff then stopped pushing on the food slot door and the officers were able to lock it. *Id.*, Exhibit A, ¶ 20, Exhibit C, ¶ 19, Exhibit D, ¶ 19. Defendants deny that Plaintiff's arm, hand or wrist was pinched or caught in the food slot. *Id.*, Exhibit A, ¶ 21, Exhibit C, ¶ 20, Exhibit D, ¶ 20. Plaintiff did not request medical treatment at any time during the incident.  *Id.*, Exhibit A, ¶ 22, Exhibit C, ¶ 21, Exhibit D, ¶ 21; Complaint at 8, 11. Fazenbaker denies that Plaintiff indicated he was "having intense chest pains," complained of a heart condition, or requested medical attention on April 30, 2011. Complaint at 10; see ECF No. 16, Exhibit F, Declaration of CO Fazenbaker, ¶4.

On April 25, 2011, two days after the incident, Plaintiff filled out a "Sick Call Request." ECF No. 16, Exhibit G, Declaration of J. Gary Sindy, p. 1, ¶¶ 5-6;.p. , 2.  Meredith Rathkamp, R.N. assessed Plaintiff on May 1, 2011, at 9:20 a.m. *Id.,* Exhibit H, Nurse note of Meredith Rathkamp. Plaintiff complained his "shoulder is in a lot of pain and he cannot move it very well." However, the nurse observed "[n]o skin discoloration or swelling noted to right shoulder, arm, or hand."  *Id.*  Plaintiff stated that his [range of motion] is limited," and the nurse found that his "grip to right hand appear[ed] weaker than left." *Id.* An x-ray taken of Plaintiff's right shoulder on September 21, 2011, showed "no evidence of acute fracture, dislocation or subluxation." *Id.*, Exhibit I, "X-Ray Requisition." "Alignment is anatomical. [] No significant abnormality seen." *Id*.

The day the incident occurred, Plaintiff was issued a Notice of Inmate Rule Violation by McKinney stemming from the homemade weapon found at the bottom of Plaintiff's cell door. *Id.,* Exhibit J, Notice of Inmate Rule Violation and Disciplinary Hearing. The hearing officer found Plaintiff not guilty of violating Rules 105 (prohibiting possession, use, or manufacture of a

weapon) and 406 (prohibiting possession or passing of contraband), because Plaintiff's "cell mate claimed ownership of the weapon." *Id.,* Exhibit J at 7; *see also* COMAR 12.02.27.04.B.(5) and E.(7).

Defendants indicate that Plaintiff never filed a request for administrative remedy ("ARP") concerning the allegations raised in the Complaint.  ECF No. 16, Exhibits L and O. Defendants raise this failure to exhaust administrative remedies as an affirmative defense in this case.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to….the nonmovant, and draw all

inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

Prior to examining the merits of the allegations, the Court must first examine Defendants' assertion that Plaintiff's case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies.   The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to Plaintiff's allegations.  His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the

PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the DOC to its prisoners. If this request is denied, the prisoner may file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner must then file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 §07.01.03.

Plaintiff asserts he need not comply with the exhaustion requirement because he "is in imminent danger of serious physical injury." ECF No. 1 at 12. Plaintiff is mistaken; under the

DCDs he can file a remedy complaint with the Commissioner of Corrections instead of the Warden if an emergency exists.  Further, nothing in the record suggests he is endangered in any way. Given Plaintiff's total failure to pursue administrative remedies, his case must be dismissed.

Defendants' dispositive motion shall be granted.  A separate order follows.


___May 8, 2012_____                    _____/s/_____
Date                                                    RICHARD D. BENNETT
                                                         UNITED STATES DISTRICT JUDGE